Roy A. Katriel (SBN 265463)
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Rd., Suite 201
Del Mar, CA 92014
Telephone: (619) 363-3333
Facsimile: (866) 832-5852
e-mail: rak@katriellaw.com

Ralph B. Kalfayan (SBN 133464)
**THE KALFAYAN LAW FIRM, APC**
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Telephone: (619) 232-0331
e-mail: ralph@rbk-law.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENA JAMIL, On Behalf Of Herself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC<br><br>Defendant. | Case No. **2:22-cv-8130**<br><br>**COMPLAINT – CLASS ACTION**<br><br>**Jury Trial Demanded** |

CLASS ACTION COMPLAINT

### NATURE OF THE ACTION

1.      Plaintiff Lena Jamil ("Plaintiff" or "Jamil") brings this class action against Defendant Mercedes-Benz USA, LLC ("Defendant" or "MBUSA") on behalf of herself and all other similarly situated California owners or lessees of Mercedes vehicles equipped with the M274 engine.  Due to a defect, known to MBUSA but undisclosed by it to the putative class members, the pistons of the M274 engine are prone to premature failure—a circumstance that requires the replacement of the entire engine.

2.      This was the fate of Plaintiff, who is the original lessee and owner of a 2016 Mercedes-Benz C300 that she leased and then bought from a MBUSA factory-authorized dealership in Los Angeles County.  When Plaintiff's car had logged only approximately 95,000 miles, Plaintiff encountered the car's engine shuddering, losing power on the freeway, such that the car eventually would no longer restart—an obvious safety risk.   When Plaintiff had the car towed to MBUSA's factory-authorized dealership, she was advised that the car had suffered a complete piston failure in at least one cylinder and pieces from that failed piston had penetrated other cylinders of the engine.  Piston failure simply does not occur in modern day vehicles absent a defect.   The piston is an integral and basic component of an internal combustion engine, whose travel inside the engine's cylinder causes the compression of the combustible fuel and air mixture that propels the vehicle.

3.      MBUSA's dealer advised Plaintiff that her car would require an engine replacement to the tune of approximately $20,000 or more.   Despite Plaintiff complaining about the need to replace an engine in a vehicle that was only a few years old and with just 95,000 miles, neither MBUSA nor its dealership offered to cover any part of the repairs.   At no time did MBUSA or its dealer disclose to Plaintiff that the premature piston failure her car had experienced was an occurrence

1    known to MBUSA to have resulted from a prevalent defect to the M274 engine.

2        4.    Unable to afford that exorbitant repair in an approximately 5-year old

3    car, Plaintiff turned to an independent mechanic who agreed to replace the engine

4    with a used long block engine at a cost of nearly $7,000 plus exchange of Plaintiff's

5    damaged engine.  With neither MBUSA not its dealer agreeing to cover any cost of

6    the repair, Plaintiff was left to pay for this repair out of her own pocket in order to

7    have an operable car, and she did so.

8        5.    Plaintiff now brings this action to seek redress for herself and all other

9    California owners and lessees of Mercedes vehicles equipped with the M274 engine

10   for MBUSA's violations of the: California Consumer Legal Remedies Act

11   ("CLRA"); California Song-Beverly Consumer Warranty Act; Commercial Code;

12   and, Unfair Competition Law ("UCL").   Plaintiff seeks, *inter alia*, statutory,

13   compensatory, and punitive damages, as well as attorneys' fees and costs of suit, as

14   classwide redress for MBUSA's violations of these statutes.

15       6.    More than 30 days before filing this action, Plaintiff, through her

16   counsel, sent a CLRA demand letter to MBUSA's registered agent in California by

17   way of Certified Mail Return Receipt Requested, informing Defendant of the nature

18   of Plaintiff's grievance under the CLRA and demanding Defendant remedy it within

19   30 days of receipt of the demand letter or, barring that, Plaintiff would initiate this

20   action.  MBUSA did not respond.  A copy of Plaintiff's CLRA demand letter is

21   attached hereto as Exhibit 1.

22                        **JURISDICTION AND VENUE**

23       7.    This Court has subject matter over this action pursuant to the Class

24   Action Fairness Act, 28 U.S.C. § 1332 (as amended 2005) because this Class Action

25   Complaint pleads a class action involving more than $5 million in controversy

26   (excluding prejudgment interest and costs) and involves a putative plaintiff class of

27

28

diverse citizenship (*i.e.,* California) than Defendant's citizenship (*i.e.,* Georgia).

8.     This Court has personal jurisdiction over Defendant Mercedes-Benz USA, LLC because Defendant markets and distributes Mercedes automobiles, including the ones forming the subject of this Class Action Complaint, within this judicial district.

9.     Venue is proper in this district because Plaintiff is a resident of this judicial district, her vehicle was purchased and malfunctioned within this judicial district, the vehicle was repaired and the damages were incurred within this judicial district, and the events giving rise to Plaintiff's claims took place within this judicial district. Venue in this district is therefore proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES AND THEIR EXPERIENCES

10.     Plaintiff Lena Jamil is a resident of Glendale, California and is therefore a citizen of California for purposes of diversity of citizenship. She is the original lessee and owner of a 2016 Mercedes Benz C300 automobile, which she leased as a new vehicle on or about April 2016 through a factory-authorized MBUSA dealership in Los Angeles County.  When her lease expired, Plaintiff purchased the vehicle from Mercedes-Benz Financial Services, Defendant's authorized lessor.  She still owns the vehicle and has been its only registered owner.

11.     On or about April 2022, when Plaintiff's car had logged only approximately 95,000 miles, Plaintiff encountered the car's engine shuddering and its unexpected loss of power on the freeway, such that the car eventually would no longer restart—an obvious safety risk.   After Plaintiff had the car towed to MBUSA's factory-authorized dealership, she was advised the car suffered a complete piston failure in at least one cylinder and pieces from that failed piston had penetrated other cylinders of the engine.  MBUSA's dealer advised Plaintiff that, as a result of the piston failure, her car required an engine replacement that would cost

approximately $20,000 or more for parts and labor.

12.     Despite Plaintiff complaining about the need to replace an engine in a vehicle that was only a few years old and with just 95,000 miles, neither MBUSA nor its dealership offered to cover any part of the repairs.   At no time did MBUSA or its dealer disclose to Plaintiff that the premature piston failure her car had experienced was an occurrence known to MBUSA to have resulted from a prevalent defect to the M274 engine.  Unable to afford that exorbitant repair in a car Plaintiff had just purchased three years ago after its lease ended, Plaintiff turned to an independent mechanic who agreed to replace the engine with a used long block engine at a cost of nearly $7,000 plus exchange of Plaintiff's damaged engine.  With neither MBUSA not its dealer agreeing to cover any cost of the repair, Plaintiff was left to pay for this repair out of her own pocket in order to have an operable car, and she did so.

13.     Defendant Mercedes-Benz USA, LLC is a limited liability corporation having its principal place of business at 303 Perimeter Center North in Atlanta, Georgia 30346. Defendant is a subsidiary of Daimler, Inc., the manufacturer of Mercedes-Benz-branded vehicles. Founded in 1965, Mercedes-Benz USA, LLC is responsible for the distribution and marketing of Mercedes and Maybach automobiles within the United States. Defendant was the entity responsible for injecting the Mercedes-Benz vehicle currently owned by Plaintiff into the United States stream of commerce.

## THE M274 ENGINE'S DEFECT, NHTSA'S INVESTIGATION, MBUSA's NON-DISCLOSURE, AND CLASS MEMBERS' RESULTING HARM

14.     Regrettably, Plaintiff's experience is hardly anomalous, and she does not bring this action on a clean slate.  MBUSA has received countless reports and complaints from vehicle owners who have experienced the same effect of the piston

defect that plagued Plaintiff's car.  At each turn, MBUSA turned a deaf ear, not only failing to make or cover repairs but also failing to provide any disclosure about this safety-related defect plaguing its cars.   Plaintiff is just the latest victim of MBUSA's material omission.

15.     Indeed, the effects of the piston defect plaguing the M274 engine are so significant and pose such a safety concern that less than two months ago, the National Highway Transportation and Safety Administration's ("NHTSA") Office of Defect Investigations ("ODI") opened a formal investigation of this same problem after receiving customer complaints about the same and conducting an initial review. A copy of NHTSA's ODI Resume document acknowledging the opening of the investigation is attached hereto as Exhibit 2.

16.     At the same time, press articles also reported on this same development and highlighted the experiences of complaining M274 engine-equipped vehicle owners—experiences that are almost identical to the one Plaintiff encountered.  An article in the automotive trade journal Autoevolution dated September 23, 2022 entitled, "*Feds Accept Defect Petition Regarding Mercedes M-274 Engine Issue*," details NHTSA's decision to open its investigation after receiving a consumer petition to do so.  A copy of that news article is attached hereto as Exhibit 3.  The article quotes and details another California owner's complaint—a report that may as well have been lifted from Plaintiff Jamil's narrative:

> "The complaint, which bears ID number 11450360, begins by mentioning the car's 51,000 miles (82,077 kilometers). Based in Chino, the owner of the C 300 reports that he was driving at 70 miles per hour (113 kilometers per hour) when he heard a popping sound. *'The car loses power, I pushed on the gas, and it started to shake violently. I panicked as the construction on the freeway was not allowing drivers a shoulder to pull over on.'*
>
> . . . .

> Towed to the nearest dealership, the C 300 was diagnosed with a cracked piston in cylinder one."

Ex. 3 hereto (italics in original).

17.     Needless to say, a vehicle whose defective engine causes it, or makes it prone, to lose power and shake on freeways and roadways poses a safety risk.  And, under California, such a defect implicating a safety risk imposes on the manufacturer or seller a duty to disclose the defect even if the defect manifests after the expiration of the vehicle's warranty's durational limit.

18.     A piston, of course, is an integral and critical component of a car and its engine.  Pistons travel inside the engine's cylinders to cause the compression of the combustible fuel and air mixture that propels the vehicle.  A defective piston, therefore, inhibits the vehicle's ability to move under its own power.  Worse yet, in this case, when the defect causes a piston to crack, particles of that cracked piston are also spewed into other cylinders, thereby rendering the whole engine inoperative.  Here, the M274 engine left the factory assembly line with defective piston components that made failure of the car virtually certain to occur during the cars' useful life.     Thus, independent of any safety-related risk posed by the defect, MBUSA, having knowledge of this critical component defect that existed since the vehicle's assembly, also separately had a duty to disclose this defect under California law.

19.     Despite its clear legal duty to do so, MBUSA never provided any disclosure to any of the putative class members about the presence of a defect to the pistons of the M274 engine.  That omission was material because an objectively reasonable consumer would have been influenced by a disclosure that the key critical component of his vehicle's engine contained a defect that made the car prone to fail

and require a complete engine replacement to the tune of approximately $20,000, as MBUSA's factory-authorized dealer demanded from Plaintiff when her car fell prey to this undisclosed defect.

20.     MBUSA knew of the defect plaguing the pistons of the M274 engines before their sale.  For starters, MBUSA's parent company was the manufacturer and assembler of the vehicle and its engine, thereby having direct and unique knowledge of its properties, characteristics, defects, and shortcomings. Further, MBUSA and its parent company circulated internal "Learning Modules" and technical bulletins to its dealers and mechanics that detailed this defective condition, its consequences, and repairs needed thereby.  MBUSA, however, chose not to disclose these modules or bulletins to unsuspecting consumers like Plaintiff or the putative class members.  Moreover, by the time Plaintiff leased and then purchased her car, MBUSA had received numerous owner reports of piston failure in cars equipped with the M274 engine.  It disclosed nothing to consumers.

21.     MBUSA had the choice and ability to prominently disclose this defect and its consequences in a manner that would inform the putative class but elected not to do so, knowing that any such disclosure would negatively affect MBUSA's ability to sell or charge as much for the Class vehicles.   Any such disclosure—especially one implicating a safety concern as this alleged defect— could have been disclosed in a manner that would have been seen by the putative class in similar fashion to how automobile manufacturers disclose other safety warnings.  Not only could MBUSA have made a disclosure in the vehicle Owner's Manual that accompanies every vehicle sale, but MBUSA also could have posted such a warning on the vehicle's instrument cluster, dashboard, or other prominent area of the car, ensuring that it would be viewable to any consumer countenancing the purchase of the car.

22.     Plaintiff relied on this material omission by MBUSA when she initially leased and then purchased her car.  Had MBUSA disclosed the defect, Plaintiff would not have leased and purchased the vehicle at all or would not have done so at the price and terms she did.  Moreover, because MBUSA's wholesale nondisclosure of the defect is a material omission, this reliance can be presumed classwide under California law.

23.     Plaintiff and all members of the putative class have been directly and proximately injured and suffered financial harm as a direct and foreseeable result of MBUSA's material omission and statutory violations.   Plaintiff and all putative class members suffered a diminution in value due to this material omission because, as a result of MBUSA's nondisclosure, they paid more for their vehicle purchase or lease than they would have paid had MBUSA disclosed that the vehicles' engines were plagued with the piston defect.   Further, those class members like Plaintiff, who did experience a manifestation of the defect and were forced to pay the cost to repair it (typically entailing an engine replacement), also sustained the additional financial injury of being forced to expend significant out-of-pocket money to repair or replace the engine or components damaged by the piston defect.  In Plaintiff's case, this added out-of-pocket cost to replace her engine with a used replacement engine totaled approximately $6,859 (and the trade of her damaged engine).

## CLASS ACTION ALLEGATIONS

24.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action as a class action on behalf of all owners and lessees within California of Mercedes vehicles equipped with the M274 engine, subject to the qualifications listed herein. Collectively, the foregoing vehicles are referred herein as the "Class vehicles."  Plaintiff is the original lessee and current owner of a Class vehicle in

California. Specifically excluded from the class are all judicial officers assigned to this case, as well as all federal and state employees, and the employees of Defendant or its corporate affiliates. Also excluded from the class definition are any individuals who allegedly have suffered personal injuries as a result of the alleged defects. Plaintiff reserves the right to amend or supplement this class definition as discovery or other case developments warrant.

25.    Although the exact number of class members is presently unknown, Plaintiff is informed and believes, based upon the number of Mercedes-Benz vehicles manufactured for sale in the U.S. that were originally equipped with the M274 engine, and thereon alleges that the class will number in the thousands of consumers, thereby making joinder impracticable.

26.    Class certification is also appropriate because there are questions of fact and/or law that are common to the class members. Among these common questions of fact and/or law are:

a. Whether Defendant is responsible for injecting allegedly defective vehicles into the United States' stream of commerce;

b. Whether the Class vehicles are defective, and, if so, the nature of the defect;

c. Defendant's knowledge and Defendant's concealment of the defect;

d. Whether Defendant violated the California CLRA, Song-Beverly Consumer Warranty Act, California Commercial Code, and UCL;

e. Whether class members are entitled to the relief sought, and if so, the proper scope of such relief.

27.    Plaintiff's claims are typical of the claims of the absent class members in that Plaintiff, like all the absent class members, claims that she is an owner of a Mercedes vehicle in California that was factory-equipped with the M274 engine that is defective. Plaintiff is a member of the class she seeks to represent, and the claims

CLASS ACTION COMPLAINT

she advances on her own behalf are identical to the claims asserted on behalf of the class.

28.     Plaintiff is an adequate class representative in that, as a member of the class and as a current owner of an allegedly defective Mercedes vehicle equipped with the M274 engine, Plaintiff's interests are entirely aligned with those of the class. There are no individual conflicts that prevent Plaintiff from adequately representing the class. Plaintiff has also retained competent counsel experienced in class action litigation.

29.     Class certification is proper because common questions of fact and law predominate over questions that may affect only individual members of the class. The Class vehicles are manufactured on an assembly line setting, subject to a common design and manufacturing plan, such that evidence of a defect in the engine and piston components would be one that would predominate over the entire class membership, as would evidence of Defendant's course of action, knowledge of the alleged defect, and any alleged concealment thereof.

30.     A class action presents a superior form of adjudication over individual litigation. The costs of litigating this action against a large and sophisticated defendant like MBUSA in comparison to the recovery or relief sought would make individual litigation impracticable. In addition, forcing individual litigation would risk the result of inconsistent rulings with respect to Defendant's duties owed to the various vehicle owners and lessees.

31.     A class action is manageable. The proposed class represents an identifiable community that can be readily identified, and the relief sought is one that can be overseen by the Court.

CLASS ACTION COMPLAINT

## COUNT I

## (VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT)

32.    Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

33.    Defendant has violated the following provisions of Cal. Civ. Code §1750 et. seq.: (a) Cal. Civ. Code §1770(a)(5): by representing that its goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; (b) Cal. Civ. Code §1770(a)(7): by representing that its goods or services are of a particular standard, quality, or grade, if they are of another; (c) Cal. Civ. Code §1770(a)(9): by advertising goods and services with the intent not to sell them as advertised; and, (d) Cal. Civ. Code §1770(a)(14): by representing that its subscription service confers or involves rights, remedies, or obligations which it does not have or involve.

34.    Defendant undertook the above and acts or practices in transactions intended to result, or which did result, in the sale of its vehicles to customers for personal, family, or household use.

35.    Defendant has therefore violated the Consumers Legal Remedies Act, and Plaintiff prays for declaratory, equitable and injunctive relief authorized by that Act.

36.    More than 30 days before filing this Class Action Complaint Plaintiff served Defendant with a written demand by way of Certified Mail Return Receipt Requested under California Civil Code, § 1782, seeking that Defendant provide full redress for the CLRA violations complained of. *See* Exhibit 1 hereto.  Defendant did not respond.

37.    Plaintiff therefore also has standing to and does seek, *inter alia*, money damages as redress for Defendant's CLRA violations, including all available

compensatory, statutory, punitive damages, and attorneys' fees and costs.  These include damages for the diminution of value sustained by all putative class members as well as damages for the out-of-pocket costs of repairs sustained by those class members, like Plaintiff, whose cars manifested the defect and who therefore paid out-of-pocket to repair or replace the engine components damaged as a result of this defect.

## <u>COUNT II</u>

### (VIOLATION OF CALIFORNIA'S SONG-BEVERLY CONSUMER WARRANTY ACT, CAL. CIV. CODE, §§1790 ET SEQ.)

38.    Plaintiff hereby incorporates by reference paragraphs 1-31 as though fully set forth herein.

39.    The Class vehicles equipped with the M274 engine are "consumer goods" within the meaning of California Civil Code, §1791(a) and Plaintiff and all class members were "buyers," "retail buyers," or "lessees" within the meaning of California Civil Code, §§1791(b) and 1791(h), as concerns the purchase or lease of the Class vehicles.

40.    By operation of California law under the Song-Beverly Consumer Warranty Act, Cal Civ. Code §1790 et seq., the sale and lease of each of the Class vehicles carried with it an implied warranty of merchantability for the Class vehicles under whose terms the vehicles were to be of merchantable quality in that they:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

41.     Each of the Class vehicles left the assembly line in an unmerchantable quality because a car manufactured with a defective piston—a critical component of its engine—in the manner alleged herein would neither pass without objection in the trade under the contract description nor be fit for the ordinary purpose for which such cars are used.  Defendant therefore breached the Song-Beverly Consumer Warranty Act's implied warranty of merchantability with respect to Plaintiff's and each of the class member's M274 engine-equipped cars.

42.     Defendant fraudulently concealed the presence of the vehicles' lack of merchantable quality by affirmatively concealing from, and failing to disclose to, Plaintiff and the class members MBUSA's knowledge that the M274 engine-equipped Mercedes vehicles were plagued off the assembly line with a defect to their pistons that made the cars prone to suffer piston failure and require engine replacement, as Plaintiff experienced.  MBUSA had this knowledge but provided it only, at most, to its own personnel in the form of internal learning modules, bulletins, and other repair documents that MBUSA affirmatively opted to keep from consumers even as MBUSA was marketing and selling these defect-plagued cars to Plaintiff and the class members.  MBUSA's fraudulent concealment was orchestrated by MBUSA not only to avoid losing sales of the M274 engine-equipped cars but also because MBUSA knew that, by failing to disclose this defect, it could make extra revenues by the sale of replacement engines and parts that aggrieved consumers would have to pay for to have their cars repaired.

43.     Plaintiff and the class members have all been directly, foreseeably, and proximately damaged as a result of MBUSA's breach of its implied warranty of merchantability under the Song-Beverly Consumer Warranty Act by, *inter alia*, suffering a diminution of value to their defect-plagued cars and by incurring out-of-pocket costs for the repair of their vehicles necessitated by MBUSA's breach of the implied warranty of merchantability.

44.     Plaintiff therefore has standing to and does seek, *inter alia*, money damages as redress for Defendant's violations of the Song-Beverly Consumer Warranty Act's implied warranty of merchantability, including all available compensatory, statutory, punitive damages, and attorneys' fees and costs.  These include damages for the diminution of value sustained by all putative class members as well as damages for the out-of-pocket costs of repairs sustained by those class members, like Plaintiff, whose cars manifested the defect and who therefore paid out-of-pocket to repair or replace the engine components damaged as a result of this defect.

## COUNT III

## (BREACH OF IMPLIED WARRANTY ACT UNDER CALIFORNIA COMMERCIAL CODE, §2314 ET SEQ.)

45.     Plaintiff hereby incorporates by reference paragraphs 1-31 as though fully set forth herein.

46.     By operation of California law under the California Commercial Code, §2314 et seq., the sale and lease of each of the Class vehicles carried with it an implied warranty of merchantability for the Class vehicles under whose terms the vehicles were to be of merchantable quality in that they:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

47.     Each of the Class vehicles left the assembly line in an unmerchantable quality because a car manufactured with a defective piston—a critical component of its engine—in the manner alleged herein would neither pass without objection in

the trade under the contract description nor be fit for the ordinary purpose for which such cars are used.  Defendant therefore breached the California Commercial Code's implied warranty of merchantability with respect to Plaintiff's and each of the class member's M274 engine-equipped cars.

48.     Defendant fraudulently concealed the presence of the vehicles' lack of merchantable quality by affirmatively concealing from, and failing to disclose to, Plaintiff and the class members MBUSA's knowledge that the M274 engine-equipped Mercedes vehicles were plagued off the assembly line with a defect to their pistons that made the cars prone to suffer piston failure and require engine replacement, as Plaintiff experienced.  MBUSA had this knowledge but provided it only, at most, to its own personnel in the form of internal learning modules, bulletins, and other repair documents that MBUSA affirmatively opted to keep from consumers even as it was marketing and selling these defect-plagued cars to Plaintiff and the class members.  MBUSA's fraudulent concealment was orchestrated by MBUSA not only to avoid losing sales of the M274 engine-equipped cars but also because MBUSA knew that, by failing to disclose this defect, it could make extra revenues by the sale of replacement engines and parts that aggrieved consumers would have to pay for to have their cars repaired.

49.     Plaintiff and the class members have all been directly, foreseeably, and proximately damaged as a result of MBUSA's breach of its implied warranty of merchantability under the California Commercial Code by, *inter alia*, suffering a diminution of value to their defect-plagued cars and by incurring out-of-pocket costs for the repair of their vehicles necessitated by MBUSA's breach of the implied warranty of merchantability.

50.     Plaintiff therefore has standing to and does seek, *inter alia*, money damages as redress for Defendant's violations of the California Commercial Code's implied warranty of merchantability, including all available

compensatory, statutory, punitive damages, and attorneys' fees and costs.  These include damages for the diminution of value sustained by all putative class members as well as damages for the out-of-pocket costs of repairs sustained by those class members, like Plaintiff, whose cars manifested the defect and who therefore paid out-of-pocket to repair or replace the engine components damaged as a result of this defect.

### COUNT IV

### (VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. AND PROFESSIONS CODE, § 17200 ET. SEQ.).

51.    Plaintiff hereby incorporates by reference paragraphs 1-31 as though fully set forth herein.

52.    California's Unfair Competition Law ("UCL") prohibits and makes actionable any unlawful, unfair, or deceptive business practice. MBUSA's actions, as alleged herein, in connection with the sale and marketing of the Class vehicles with a latent undisclosed defect to their piston components amounts to, at least, an unlawful and deceptive business practice and, hence, a violation of the UCL.

53.    For at least the reasons alleged in Counts I-III of this Class Action Complaint, Mercedes' actions are an unlawful business practice in that MBUSA's violation of the CLRA, Song-Beverly Consumer Warranty Act, and California's Commercial Code is independently unlawful and violates those separate statutes.

54.    MBUSA's marketing and sale of the Class vehicles without disclosing the existence of the latent defect plaguing the cars' piston components of the M274 engines when Defendant knew of the defect also amounts to a fraudulently deceptive business practice within the meaning of the UCL. The conduct was fraudulent and deceptive because it was intended to and did mislead and deceive the Plaintiff and the class members. Had MBUSA disclosed to the Plaintiff or to the public at large

that the M274 engine-equipped vehicles contained a latent defect that would result in their vehicle's piston and engine failing well before its useful or reasonably expected lifetime, Plaintiff would not have purchased her vehicle. MBUSA knew that if it were to make such a disclosure as to the existence of this latent defect, consumers at large would feel and react similarly and forego their purchases of these vehicles or pay less for the cars than they paid without having such a disclosure. As a result, MBUSA intentionally elected to conceal its knowledge of this existing latent defect.

55.   MBUSA's business practice of marketing, distributing, and selling the M274 engine-equipped cars while materially omitting any mention of the defect plaguing the cars' piston components also was an unfair business practice within the meaning of the UCL.

56.   As a direct, proximate, and foreseeable result of MBUSA's unlawful fraudulently deceptive, and unfair business practices, Plaintiff and the class members sustained an ascertainable loss, in that: they are left with, or have paid, an expense of thousands of dollars to have their vehicles repaired to remedy the defective piston components and engine; their vehicles have sustained a loss or diminution of value as a result of this undisclosed defect; and, have or will incur incidental expenses attributable to the loss of use of the vehicle during the time that the vehicles are being repaired.

57.   Moreover, because of MBUSA's unlawful, fraudulently deceptive, and unfair business practices, class members conveyed moneys and benefits to MBUSA's in the form of either the purchase price or lease payments for their vehicles and/or the repair and parts costs for their vehicles to repair the damage caused by the defect at issue.

58.   Plaintiff and the class members are entitled to and do seek an order of

restitution forcing MBUSA to restore to them the benefits and monies they conveyed to MBUSA in connection with their lease or purchase of the Class vehicles or any repair or replacement of the defective parts of these vehicles.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the class members pray for judgment against Defendant as follows:

a) That the Court determine that this action may be litigated as a class action, and that Plaintiffs and her counsel be appointed Class representative and class counsel, respectively;

b) That the Court enter judgment against Defendant and in favor of Plaintiff and the class and its members on all counts;

c) That the Court declaring as a matter of law that Defendant's practices alleged in this Class Action Complaint amount to violations of the California Consumer Legal Remedies Act, Song-Beverly Act, California's Commercial Code, and the UCL;

d) That all available and the full extent of recoverable damages be awarded to Plaintiff and the class members according to proof;

e) That Defendant be ordered to pay Plaintiff and the class members punitive damages;

f) That Defendant be ordered to fund a common fund from which any award of money damages, claims, administration and notice costs, attorneys' fees, and costs of suit will be paid;

g) That Defendant be enjoined from continuing to either market such vehicles without making disclosure as to the defective nature of the vehicles' engines;

h) That, for Defendant's violations of the UCL, Defendant be ordered to

restore to Plaintiff and the class members the moneys conveyed to Defendant by Plaintiff and the class members while Defendant was engaged in unlawful, unfair, or fraudulently deceptive business practices in connection with the lease, sale, or repair of the Class vehicles;

i) That Defendant be ordered to pay Plaintiff's counsel and class counsel's attorneys' fees and costs of suit;

j) That Plaintiff and the class members be awarded all such other relief as this Court deems just and proper.

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all causes of action so triable.

Dated:  November 7, 2022                    Respectfully submitted,

**THE KATRIEL LAW FIRM, P.C.**

*/s/ Roy A. Katriel*
Roy A. Katriel, Esq. (SBN 265463)
2262 Carmel Valley Road, Suite 201
Del Mar, CA  92014
Tel: (619) 363-3333
Email: rak@katriellaw.com

**THE KALFAYAN LAW FIRM, APC**
Ralph B. Kalfayan (SBN 133464)
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Tel: (619) 232-0331
Email: ralph@rbk-law.com

*Counsel for Plaintiff and the Proposed Class*